# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CUSTOM COURTS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CONNOR SPORT COURT INTERNATIONAL, LLC, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING REQUEST FOR PRELIMINARY RELIEF**<br><br>Case No. 2:25-cv-1048-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs Custom Courts, Inc.; Southwest Courts and Floors, Inc.; Allsport America, Inc.; TD Sports, Inc.; Sport Court of the Rockies, LLC; Sports Facilities, Ltd.; Sportscape Ltd.; Sport Court Midwest, Inc.; Court of Sport, Inc.; Court Development, Inc.; Sport Court Carolina, Inc.; Carolina Sport Court, LLC; Sport Court of South Florida, Inc.; Legendary Sports Construction of Nevada, LLC; Sport Court of Arkansas; and Helfers Lawn and Landscape, LLC, d/b/a Sport Court St. Louis, sue Connor Sport Court International, LLC; Gerflor USA, Inc.; and Snap Lock Industries, Inc., alleging violations of the Lanham Act and the Clayton Antitrust Act and also asserting claims for breach of contract, tortious interference with contract, and breach of the implied covenant of good faith and fair dealing. The Plaintiffs seek a temporary restraining order and a preliminary injunction. The court denies the Plaintiffs' request for preliminary relief.

## I.

Defendant Connor Sport Court "manufacture[s] and distribute[s] premium sports flooring products marketed and sold under the Sport Court brand." Dkt. No. 31 at 7 ¶ 29. These "products are used by families, school districts, municipal parks and community centers, and organizations such as the NBA, USTA, NCAA, USA Volleyball, FIBA Basketball, Futsal, U.S. Soccer and USA Pickleball." *Id.* The Plaintiffs allege that they are or were "exclusive residential and/or commercial distributors of Sport Court products under exclusive distributor agreements" with

Connor Sport Court and that some of them have distributed Sport Court products with exclusivity in their geographic territories "for decades." *Id.* at 7 ¶ 30. Defendant Gerflor acquired Connor Sport Court in 2014, and it has since also acquired a competitor, Defendant Snap Lock Industries, which manufactures sports flooring under a brand called "SnapSports." *Id.* at 3, 8–9 ¶¶ 4, 33, 35.

The Plaintiffs aver that "[i]n May 2025," they "formed an entity called Sport Ventures, LLC. The purpose of Sport Ventures, LLC has been to try and open lines of communication with [Connor Sport Court] regarding several ongoing issues that have affected" the Plaintiffs' business, "namely a lack of transparency regarding the relationship between [Connor Sport Court] and SnapSports and Gerflor's plans surrounding SnapSports, . . . prevalent and ongoing infringement of the Sport Court brand and trademarks, product delivery issues, warranty issues, decreased national support of the Distributor network, and a recent ban on Distributors selling acrylic surfaces." *E.g.*, Dkt. No. 105 at 3 ¶ 8.[1]

Ryan Day, Connor Sport Court's managing director, avers that on or around June 27, 2025, Connor Sport Court "sent letters to the individual Plaintiffs reiterating that [it] expected compliance with their contractual obligations and informing them of breaches, or potential breaches, of their Confidentiality Agreements." Dkt. No. 125 at 5 ¶ 20. Eight such letters, including letters to seven Plaintiffs whose contracts Connor Sport Court has since terminated, also "included notices to cure due to . . . failure to meet . . . contractual performance requirements." *Id.* at 5 ¶ 21. In the letters, Connor Sport Court gave the Plaintiffs 60 days to cure their alleged breaches and shortfalls. *See id.* at 5 ¶ 22. The Plaintiffs aver that this cure process

---

[1] Each Plaintiff has submitted its own declaration in support of the motion. The averments included here are drawn from one apparently representative declaration.

included a "demand[]" to "submit a written business plan and schedule a meeting with [Mr. Day] . . . within 60 days." Dkt. No. 105 at 4 ¶ 12.

Mr. Day avers that the Plaintiffs' counsel then sent a letter to Connor Sport Court on July 3, 2025, stating in part, "please be advised that any upcoming meetings you may have scheduled with individual members of Sport Ventures, LLC are hereby canceled." Dkt. No. 125 at 5 ¶ 23; *see also* Dkt. No. 125-6 (letter). The letter went on to request that Connor Sport Court direct all future communications with the Plaintiffs to counsel and to "request a meeting between Gerflor/Sport Court and the full" group of Plaintiffs "together with counsel." Dkt. No. 125-6 at 2.

Mr. Day avers that Connor Sport Court later sent letters to the terminated Plaintiffs on September 9, 2025, "extending the time for them to cure" their alleged breaches "via submission of a Business Plan within fourteen days and scheduling a meeting with [Mr. Day] by October 14, 2025." Dkt. No. 125 at 7 ¶ 35 (cleaned up). He further avers that these Plaintiffs "provided proposed business plans on or about September 22, 2025, but nearly all of the business plans appear to have been generated by artificial intelligence due to their formats, including generic placeholders," and none "included information regarding the business[es]' marketing spend." *Id.* at 7–8 ¶¶ 41–42.

Mr. Day avers that Connor Sport Court accordingly "required, via email," the terminated "Plaintiffs to supplement their business plans via an excel spreadsheet setting forth specific metrics, . . . including marketing spend, and proposed in-person meetings on October 16 and 17 in Salt Lake City." *Id.* at 8 ¶ 43. After the terminated Plaintiffs requested to postpone those meetings, *see id.* at 8 ¶ 44, counsel for Connor Sport Court wrote to the Plaintiffs' counsel proposing two new dates—October 29 and November 6—and informing the Plaintiffs that, "[a]s

3

a condition precedent to meeting, [these Plaintiffs] must fill out all of the [marketing] information in the attached excel spreadsheet" or otherwise be "deemed to have failed to cure their breaches." Dkt. No. 97-7 at 2 (letter).

The terminated Plaintiffs aver that the information requested in these spreadsheets related to their "non-Sport Court . . . business" and maintain that it was not reasonable for Connor Sport Court to demand such information as a condition precedent to meeting. Dkt. No. 105 at 4–5 ¶ 15. They aver that they "offered to meet with [Connor Sport Court] via Zoom or Teams to discuss a productive resolution to the situation," id., and they argue in their motion that "they have resisted only [Connor Sport Court's] imposition of additional, extracontractual prerequisites to meeting," Dkt. No. 97 at 15 ¶ 22.

No meeting apparently took place, and Mr. Day avers that on November 7, 2025, these "Plaintiffs' contracts were terminated for their failure to cure their breaches." Dkt. No. 125 at 9 ¶ 48.

The terminated Plaintiffs argue that Connor Sport Court breached its contracts with them by terminating those contracts without cause. They seek a temporary restraining order and preliminary injunction requiring Connor Sport Court to reinstate their contracts and to allow them to place orders "without surrendering their exclusivity." Dkt. No. 97 at 24. And the Plaintiffs whose contracts have not been terminated seek a temporary restraining order and a preliminary injunction preventing Connor Sport Court from terminating their contracts. The Plaintiffs have subsequently expressed their willingness to narrow the scope of the preliminary relief they seek to "reinstatement of access to [Connor Sport Court's] dealer portal for the pendency of this litigation." Dkt. No. 165 at 6.

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Stuber v. Lucky's Auto Credit, LLC*, 478 F. Supp. 3d 1205, 1208 (D. Utah 2020).

"[E]ach of these elements is a prerequisite for obtaining" preliminary injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). It follows that a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Village of Logan v. United States Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished).

Although the complaint includes several causes of action, the request for preliminary relief is based solely on the Plaintiffs' claims for breach of contract, and the parties appear to agree that Utah law governs the merits of these claims. The elements of a claim for breach of contract under Utah law are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *America W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) (cleaned up). The second element, performance by the party seeking recovery, requires a plaintiff to "show . . . that [it] has, substantially at least,

complied with the provisions of the contract." *Larson v. Stauffer*, <u>518 P.3d 175, 180</u> (Utah Ct. App. 2022) (cleaned up). "Substantial performance exists where there has been no willful departure from the terms of the contract, and no omission in essential points, and the contract has been honestly and faithfully performed in its material and substantial particulars." *Id.* (cleaned up).

The court concludes that the Plaintiffs have failed to show that they are likely to establish that they performed their obligations under the contract, and thus that they have failed to demonstrate a likelihood of success on the merits of their claims for breach of contract. The court accordingly denies their request for preliminary injunctive relief without addressing the other preliminary-injunction factors.

As an initial matter, the Plaintiffs have all entered into separate contracts with Connor Sport Court, and they have done so at different times. The Plaintiffs do not appear seriously to dispute Connor Sport Court's representation that there are various differences among these contracts. *See* <u>Dkt. No. 135 at 6</u>–7. Yet they have put little effort into explaining how each Plaintiff's contract individually justifies relief and how each Plaintiff has performed its unique obligations. Given that each Plaintiff has the burden to show *its own* "clear and unequivocal" right to preliminary relief, *Aposhian*, <u>958 F.3d at 978</u> (cleaned up), the Plaintiffs' general, lumped-together assertion that their contracts all support the extraordinary remedy they seek does not appear to satisfy their "responsibility to tie the salient facts, supported by specific record citation, to [their] legal contentions," *Schaede v. Boeing Co.*, <u>1995 WL 736464</u>, at *1 (10th Cir. Dec. 13, 1995) (unpublished).[2] It is not, after all, the court's job to "sift through the record to

---

[2] Indeed, it is not even clear that the Plaintiffs can properly group all of their breach-of-contract claims into a single count in the complaint; after all, claims "founded upon" sufficiently

find th[e] evidence" required for the Plaintiffs' claims to succeed. *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990) (cleaned up).

Even if the court did undertake that quest, however—and the parties apparently agree that there are at least some provisions common to the contracts at issue that may partially obviate its need to do so—the Plaintiffs have failed to argue, let alone demonstrate, that they have "substantially performed" their contractual obligations. *Larson*, 518 P.3d at 180.

Each of the Plaintiffs' contracts apparently sets forth "Performance Requirements," including sales targets, as well as a mandate that, should the distributor "fall short of [its] Sales Forecast for the year, [it] shall meet with [Connor Sport Court] to fully discuss and analyze the causes of the shortfall and implement appropriate corrective actions for the next year." *E.g.*, Dkt. No. 123-1 at 17–18. The requirement to meet with Connor Sport Court to discuss shortfalls and identify corrective actions clearly appears to be a "covenant" each Plaintiff has undertaken—that is, a "mutual obligation[] the parties bargain[ed] for in their agreement" that gives rise to a "duty to perform." *Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 367 P.3d 994, 997 (Utah 2016).[3] Not only does "failure to perform" such covenants "generally give[] rise to

---

"separate transaction[s] or occurrence[s]" generally must be "stated in . . . separate count[s]" to "facilitate[] the clear presentation of the matters set forth." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000). The court need not and does not resolve this issue at this time, however.

[3] To be sure, the Plaintiffs maintain that their "performance requirements are at most conditions, and not covenants." Dkt. No. 97 at 20 & n.4. But whether or not this is true of the *performance* requirements, the separate requirements to *meet* in the event of an alleged performance shortfall to identify appropriate corrective actions clearly appear to be "promise[s]" that create "specific legal duties," and thus covenants. *McArthur v. State Farm Mut. Auto. Ins. Co.*, 274 P.3d 981, 987 (Utah 2012) (cleaned up). A condition, by contrast, is "an event, not certain to occur, which must occur before performance under a contract becomes due." *Id.* (cleaned up). The court sees no colorable argument that a requirement to meet to discuss corrective actions for alleged shortfalls is somehow an uncertain event. Nor do the Plaintiffs appear seriously to dispute that the alleged shortfalls existed, *see, e.g.*, Dkt. No. 105 at 2 ¶ 6

remedies for breach of contract" against the failing party, *id.*, but it also precludes the failing party from showing the "[s]ubstantial performance" required to maintain a claim for breach of contract against its counterparty, *Larson*, 518 P.3d at 180.

The letters Mr. Day sent to the terminated Plaintiffs on June 27, 2025 included "notices to cure due to their failure to meet their contractual performance requirements," Dkt. No. 125 at 5 ¶ 21, and required them to "[s]chedule and complete a meeting with Ryan Day" within 60 days to discuss the alleged failure, *e.g.*, Dkt. No. 113-2 at 3. In these letters, Connor Sport Court thus appears to invoke the contractual provisions requiring distributors, in the event of a shortfall with respect to the "Sales Forecast," to "meet with [Connor Sport Court] to fully discuss and analyze the causes of the shortfall and implement appropriate corrective actions." *E.g.*, Dkt. No. 123-1 at 18. Indeed, it appears that at least some of the Plaintiffs proceeded to schedule these meetings. *See* Dkt. No. 125 at 5 ¶ 24.

Mr. Day avers, and the Plaintiffs do not dispute, that in response to these letters, the "Plaintiffs' counsel sent a letter to [Connor Sport Court] on July 3, 2025, stating[,] . . . please be advised that any upcoming meetings you may have scheduled with individual members of Sport Ventures, LLC"—that is, the Plaintiffs—"are hereby cancelled." *Id.* at 5 ¶ 23; *see also* Dkt. No. 125-6 (letter). The Plaintiffs' counsel instead proposed "a meeting between Gerflor/Sport Court and the full membership of Sport Ventures, LLC, together with counsel, at a mutually convenient time and location to discuss the concerns and find an amicable resolution that is fair to all parties." Dkt. No. 125-6 at 2.

---

rather, they appear to maintain only that the shortfalls are attributable to Connor Sport Court's earlier actions, *see id.* at 3 ¶ 7. But the Plaintiffs' contracts do not say that their promises to meet to discuss corrective actions depend on who is at fault for the shortfalls.

Connor Sport Court argues that by canceling the meetings they had covenanted to attend in response to the notices of shortfall and refusing to meet with Connor Sport Court individually (as opposed to collectively), the Plaintiffs breached their obligations under the contract as of the date of this letter. At least at first blush, this argument appears to be well taken. Under Utah law, the letter likely constitutes an "anticipatory breach," which "occurs when a party . . . manifests a positive and unequivocal intent not to render its promised performance." *Cobabe v. Stanger*, 844 P.2d 298, 303 (Utah 1992).

The Plaintiffs offer no response to this argument. They provide no justification whatsoever for canceling the meetings already scheduled at the time their counsel sent this letter. And they identify nothing in the separate, individual contracts that each of them has with Connor Sport Court that contemplates—let alone requires—a collective meeting between Connor Sport Court and multiple distributors if more than one distributor is accused of a performance shortfall. Nor have the Plaintiffs otherwise explained—let alone demonstrated—how their seemingly extracontractual counteroffer of a joint meeting satisfied their covenants to meet in the event of an alleged shortfall or somehow reflected an intent to perform those covenants. In short, the Plaintiffs make no attempt to argue or explain how they can show they have performed their obligations under their contracts, as is required under Utah law to maintain a claim for breach of contract, in light of the July 3rd letter. The court accordingly concludes that they have failed to demonstrate a likelihood of success on the merits of their breach-of-contract claims.

To be sure, the Plaintiffs argue that they were justified in declining to schedule or attend the *September or October* meetings because Connor Sport Court refused to meet unless they first provided confidential information to which they maintain it was not entitled. *See* Dkt. No. 135 at 7–8; Dkt. No. 97-7 at 2. But even if the Plaintiffs are correct that this *later* refusal was justified,

this argument does not justify or explain the letter sent by their counsel on July 3rd, by which they canceled all then-scheduled meetings, apparently refused to meet with Connor Sport Court individually as opposed to collectively, and thus seemingly repudiated their covenants to meet.

The Plaintiffs also argue that, under the contracts, a breach for failure to meet sales targets does not occur unless and until the "Distributor's sales continue to fall significantly short of the Sales Forecast by the end of the year" after the meeting to discuss corrective actions "and [the Distributor] ha[s] continued to not fully implement all recommended corrective actions identified from the previous year." *E.g.*, Dkt. No. 123-1 at 44. But this argument misses the mark. Even if this contractual provision describes *one* way a Distributor can be "considered in breach," *id.*, the law is clear that failure to comply with covenants—especially if coupled with a repudiation of those covenants—can also constitute a breach, *see Cobabe*, 844 P.2d at 303. And given that failure substantially to comply with *any* material provision of their contracts precludes the Plaintiffs from showing the substantial performance necessary to maintain a claim for breach of contract under Utah law, *see Larson*, 518 P.3d at 180; *America W.*, 342 P.3d at 230, the court concludes that Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their breach-of-contract claims, even if they have not *also* breached their contracts by failing to meet performance targets.

*     *     *

For the foregoing reasons, Docket Number 79, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction Against Defendant Connor Sport Court International, LLC, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 18th day of March, 2026.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge